SARA AZARI (SBN: 237987)
Law Office of Sara Azari
849 S. Broadway, Suite 1107
Los Angeles, California 90014
Telephone (213) 622-5000
Facsimile  (213) 254-0555
Email: sara@azarilaw.com

VICTOR SHERMAN (SBN: 38483)
LAW OFFICES OF VICTOR SHERMAN
11400 West Olympic Boulevard, Suite 1500
Los Angeles, California 90064
Telephone: (424) 371-5930
Facsimile:  (310) 392-9029
Email: victor@victorsherman.law

Attorneys for Defendant
ARTHIT TANJAPATKUL

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>    v.<br><br>ARTHIT TANJAPATKUL,<br><br>         Defendant. | ) Case No. 8:24-CR-00132-FWS<br>)<br>)<br>)<br>) **DEFENDANT'S MOTION IN**<br>) **LIMINE TO EXCLUDE EXPERT**<br>) **TESTIMONY OF FBI SPECIAL**<br>) **AGENT BRITTANY RADKE;**<br>) **MEMORANDUM OF POINTS**<br>) **AND AUTHORITIES;**<br>) **DECLARATION**<br>) **OF SARA AZARI**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1

# **INTRODUCTION**

Defendant Arthit Tanjapatkul respectfully moves in limine to exclude the proposed expert testimony of Federal Bureau of Investigation Special Agent Brittany Radke in its entirety. The Government's May 1, 2026 Rule 16(a)(1)(G) disclosure (the "Disclosure") notices SA Radke as an expert "in the behavior of child exploitation offenders" and identifies eight topics on which she will opine. The Disclosure is attached as Exhibit A and incorporated by reference.

The proposed testimony should be excluded for three independent reasons.

First, the only contested issue at trial is whether Mr. Tanjapatkul *knowingly* possessed the charged material. SA Radke's testimony — about how "child exploitation offenders often" behave, how they "often" use dark nets and VPNs, how they "often maintain" their collections, and how individuals with a sexual interest in children "may receive sexual gratification" — does not address knowing possession. It addresses whether Mr. Tanjapatkul fits a profile, which is not an element of the offense and not relevant under Rules 401 and 402.

Second, even if marginally relevant, profile testimony of this kind carries an overwhelming risk of unfair prejudice, jury confusion, and decision on improper character grounds. Rule 403 and Rule 404(a) require its exclusion. The Ninth Circuit has repeatedly reversed convictions where the government used "modus operandi" or "profile" testimony as substantive evidence of guilt.

Third, the Disclosure itself is internally contradictory and facially deficient under Rule 16(a)(1)(G) as amended in December 2022. SA Radke proposes to testify that "there is no single profile that fits an individual who possesses child pornography" (Topic 7) — and then proposes five separate topics describing the very profile she concedes does not exist. The Disclosure also fails to provide the bases and reasons for any of her opinions, identify any methodology, or supply any of the foundational information Rule 16 requires.

Each ground independently warrants exclusion. Together they are dispositive. The Court should grant this motion and preclude SA Radke from testifying at trial.

2

## BACKGROUND

Mr. Tanjapatkul is charged in a multi-count Indictment that includes possession of child pornography in violation of 18 U.S.C. § 2252A. The sole disputed element on the possession charge is *knowledge* — that is, whether Mr. Tanjapatkul knowingly possessed the charged material. The Government does not allege, and intends to offer no evidence, that Mr. Tanjapatkul produced, distributed, or received child pornography in any sense beyond simple possession. There is no allegation that he used dark nets, Tor, VPNs, proxies, or peer-to-peer trading networks. There is no allegation that he traded with other offenders or maintained a curated "collection" across multiple devices.

Notwithstanding the narrow factual issue at trial, on May 1, 2026, the Government disclosed SA Radke as an expert "in the behavior of child exploitation offenders." The Disclosure identifies eight topics:

1. Computers and computer technology have "revolutionized" the way child pornography is produced and distributed (Topic 1);

2. A definition of "the Internet" (Topic 2);

3. That "child exploitation offenders often use the Internet and social media applications to gain access to child pornography" (Topic 3);

4. That individuals with a sexual interest in children "may receive sexual gratification" from contact with or images of children, and "often maintain possession" of such items "for long periods of time" in "numerous places — in digital devices in their homes, in their cars, in their workplaces, or on their persons" (Topic 4);

5. That digital child pornography is "easy to maintain" because of large storage capacities and cheap external storage, and that individuals with a sexual interest in children "often maintain possession" of such material "for long periods of time" (Topic 5);

3

6.      That "child exploitation offenders often use dark nets, dark markets, proxies, and virtual private networks" and that acquisition of child pornography "requires several steps that makes accidental download unlikely" (Topic 6);

7.      That "there is no single profile that fits an individual who possesses child pornography" (Topic 7); and

8.      That individuals who possess child pornography "can go for varying lengths of time without accessing" their collection because they can also access such material online (Topic 8).

The Disclosure provides no bases or reasons for any of these opinions, no description of any methodology, no studies, no error rates, and no application of any analytical framework to the facts of this case. It identifies SA Radke's training and assignment history but supplies nothing else.

SA Radke joined the FBI in 2019 and was assigned to Counterintelligence (June 2019 – June 2023) investigating Russian technology-transfer and export-control matters, then to Criminal Threats (July 2023 – September 2024) investigating online and school-shooting threats. She has been on the Crimes Against Children squad only since October 2024 — approximately nineteen months. She has never testified as an expert in any case in the past four years and has authored no publications. The Disclosure does not identify a single peer-reviewed source, validated study, or error rate that supports any of her opinions.

## LEGAL ANALYSIS

**I.      SA RADKE'S PROPOSED TESTIMONY IS IRRELEVANT BECAUSE IT DOES NOT TEND TO PROVE OR DISPROVE THE ONLY DISPUTED ISSUE — KNOWING POSSESSION**

Federal Rule of Evidence 401 defines relevant evidence as evidence that has "any tendency to make a fact more or less probable than it would be without the evidence," where "the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Where, as here, the

disputed issue is whether the defendant *knowingly* possessed the material, evidence about how unidentified other offenders behave is not probative of that issue.

The Government must prove that Mr. Tanjapatkul knew the material existed on his device and knew its character. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994); Ninth Circuit Model Crim. Jury Instr. 12.46 (knowing receipt and possession of child pornography). What the Government must *not* prove is that Mr. Tanjapatkul fits any particular offender profile — because there is no "profile" element to the offense. Yet that is precisely what each of Topics 3 through 6 and 8 is designed to suggest: that *because* "offenders often" do X, and *because* Mr. Tanjapatkul allegedly did X, he must be a knowing offender. That is propensity reasoning dressed up as expert opinion.

Topics 1 and 2 — generic descriptions of digital technology and the definition of "the Internet" — are not expert matters at all. They are common knowledge to any juror in 2026 and add nothing to the fact-finding process. *See* Fed. R. Evid. 702(a) (expert testimony permitted only if it "will help the trier of fact"). To the extent the Government wishes to establish the interstate-commerce element, the forensic agent who actually examined Mr. Tanjapatkul's devices is the proper witness. SA Radke offers no opinion connected to the evidence in this case.

Topic 7 — that there is "no single profile" — is, by its own terms, a non-opinion. It states the negative. It does not tend to prove or disprove any fact at issue. It is, at most, a concession that vitiates the rest of the proposed testimony (discussed below) and serves no independent purpose at trial.

Topics 3, 4, 5, 6, and 8 are the heart of the Government's profile case. They describe what "child exploitation offenders often" do — use the Internet (Topic 3), maintain collections in multiple places (Topic 4), keep material on cheap storage devices for long periods (Topic 5), use dark nets and VPNs (Topic 6), and go without accessing the material for long stretches (Topic 8). None of these statements has any tendency to prove that *Mr. Tanjapatkul* knowingly possessed anything. They are

general statements about an undefined population of "offenders." Whether that population behaves a certain way says nothing about whether Mr. Tanjapatkul belongs to that population. The reasoning is circular: the Government would have the jury infer he is an offender because he behaves like one, when whether he behaves like one is the very question they are charged with deciding.

The Ninth Circuit has rejected this exact form of reasoning. In *United States v. Vallejo*, 237 F.3d 1008, 1016–17 (9th Cir. 2001), *amended*, 246 F.3d 1150 (9th Cir. 2001), the court reversed a drug-importation conviction where the government's agent testified about how "unknowing couriers" are not generally used by drug-trafficking organizations. The court held that such "modus operandi" testimony was inadmissible because it was used not to explain the operations of trafficking organizations but "to imply that [the defendant] must have had the requisite knowledge to be guilty of the crime charged." *Id.* at 1017. The same defect is present here. SA Radke's proposed testimony has no purpose other than to invite the jury to infer that Mr. Tanjapatkul *must have* known what was on his device because that is what "offenders" know.

Accordingly, Topics 1, 2, 3, 4, 5, 6, and 8 fail Rule 401, and Topic 7 — a stand-alone negative — has no independent relevance.

## II.    WHATEVER MARGINAL PROBATIVE VALUE THE TESTIMONY MIGHT HAVE IS SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE, CONFUSION, AND DECISION ON IMPROPER GROUNDS

Rule 403 permits exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. SA Radke's proposed testimony fails Rule 403 for three reasons that operate in combination.

First, profile testimony in child-exploitation cases poses a uniquely high risk of inflaming the jury. The proposed testimony covers "sexual gratification" derived

6

from images of children (Topic 4), use of "dark nets" and Tor (Topic 6), and the maintenance of "collections" of contraband over years (Topics 4–5). Even when generically phrased, this testimony invites the jury to picture the worst-case offender and then map that picture onto Mr. Tanjapatkul. That is the textbook unfair-prejudice scenario Rule 403 is designed to prevent.

Second, the Ninth Circuit has repeatedly excluded "modus operandi" testimony as unfairly prejudicial when the government uses it as substantive evidence of a defendant's mental state. *See United States v. Pineda-Torres*, 287 F.3d 860, 864–65 (9th Cir. 2002) (reversing where agent testified that drug organizations do not entrust drugs to unknowing couriers); *United States v. Sepulveda-Barraza*, 645 F.3d 1066, 1072 (9th Cir. 2011) (Rule 403 violated where government used drug-structure testimony to argue defendant must have known about drugs in vehicle); *United States v. Gutierrez-Castro*, 805 F. Supp. 2d 1218, 1226–28 (D.N.M. 2011) (excluding similar testimony as unfairly prejudicial). The government's strategy in those cases — and the strategy here — is to import generalized expert opinion to fill an evidentiary gap on knowledge. Rule 403 forbids it.

Third, the testimony will confuse the jury about what they must decide. The jury's task is to evaluate the specific facts about Mr. Tanjapatkul. Hearing extensive testimony about what "offenders often" do invites them instead to ask whether Mr. Tanjapatkul *looks like* an offender. That is the wrong question and a Rule 403 "confusion of the issues" problem of the first order.

The aura of authority that attaches to an FBI agent compounds each of these dangers. *See United States v. Freeman*, 498 F.3d 893, 906 (9th Cir. 2007) (warning of the "aura of special reliability and trustworthiness" surrounding law-enforcement expert testimony). Jurors will hear an FBI special agent describe the typical offender's habits and naturally — and impermissibly — measure Mr. Tanjapatkul against that template.

///

### III.   THE TESTIMONY IS IMPERMISSIBLE PROFILE AND PROPENSITY EVIDENCE BARRED BY RULE 404

Rule 404(a)(1) prohibits the use of "[e]vidence of a person's character or character trait … to prove that on a particular occasion the person acted in accordance with the character or trait." Profile testimony — testimony that the defendant possesses characteristics typical of those who commit the charged crime — is character evidence by another name. The Ninth Circuit has so held. *See United States v. Lui*, 941 F.2d 844, 847 (9th Cir. 1991) ("Drug courier profile evidence is inherently prejudicial because of the potential it has for including innocent citizens as profiled drug couriers."); *United States v. Beltran-Rios*, 878 F.2d 1208, 1210 (9th Cir. 1989) (same).

The principle is general. Whether the profile is a "drug courier profile," a "gang member profile," or — as here — a "child exploitation offender profile," Rule 404 forbids the government from arguing: this is what offenders look like; the defendant looks like that; therefore the defendant is an offender. Yet that is exactly the inferential chain Topics 3 through 6 and 8 are designed to construct. They describe how "offenders often" behave, and the jury is asked — by implication and ultimately by argument — to find that Mr. Tanjapatkul fits that pattern and is therefore guilty.

The Government has not noticed any of this testimony as Rule 404(b) evidence (and could not, because no specific prior act is identified). It is generic, generalized character testimony that does not fall within any Rule 404(b) exception. It is precisely the inferential leap Rule 404(a) prohibits.

### IV.   THE DISCLOSURE IS INTERNALLY CONTRADICTORY AND FACIALLY DEFICIENT UNDER RULE 16(a)(1)(G)

The Disclosure contradicts itself. Topic 7 states that "there is no single profile that fits an individual who possesses child pornography." That concession is incompatible with Topics 3, 4, 5, 6, and 8 — every one of which describes what

"child exploitation offenders often" do or what "individuals" with a sexual interest in children "often maintain." The Government cannot have it both ways. Either there is a profile (in which case Topic 7 is wrong and the testimony is inadmissible profile evidence under Rule 404 and *Lui*), or there is not (in which case Topics 3 through 6 and 8 lack any reliable foundation and fail Rule 702). The internal contradiction is itself a basis for exclusion: a reliable expert opinion cannot rest on a methodology the expert simultaneously concedes is unsound.

The Disclosure also fails Rule 16(a)(1)(G). Effective December 1, 2022, Rule 16(a)(1)(G)(iii) requires the government to provide "a complete statement of all opinions that the government will elicit from the witness in its case-in-chief" and, critically, "*the bases and reasons for them*." The amendment was specifically designed to remedy the bare-topic disclosures that had become routine in federal criminal practice. *See* Fed. R. Crim. P. 16, advisory committee's note to 2022 amendment ("The amendment requires more complete pretrial disclosure of expert testimony… to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed.").

The Disclosure here recites topic headings and nothing more. It does not identify *any* basis for the assertion that "offenders often use" dark nets and VPNs (Topic 6), or that they "often maintain" collections "for long periods of time" (Topics 4–5), or that "acquisition of child pornography requires several steps that makes accidental download unlikely" (Topic 6). It cites no studies, no datasets, no published research, no error rates, no peer-reviewed authority. It does not even claim a methodology. SA Radke's nineteen months on a Crimes Against Children squad — preceded by four years investigating Russian export controls and online threats — is offered as the entirety of her foundation.

That is not a Rule 16 disclosure. Courts have not hesitated to exclude or limit expert testimony where the disclosure fails the new Rule 16 standard. *See, e.g.,*

*United States v. Valle*, No. 21-CR-20106, 2024 WL ___ (discussing post-2022 Rule 16 expert-disclosure requirements). At minimum, the Court should hold the Government to the rule it has been on notice of for more than three years.

Topic 6 deserves particular scrutiny. The assertion that the steps required to acquire child pornography "makes accidental download unlikely" is a thinly veiled opinion on the ultimate issue of *knowledge* — phrased as a generalization about an unidentified population. There is no methodology behind that opinion in the Disclosure. There is no study cited. There is no error rate. The Government cannot smuggle a knowledge inference past Rule 702 by labeling it as expertise about "offenders" generally. *See* Fed. R. Evid. 704(b) (expert in a criminal case "must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime").

## V.     THE APPROPRIATE REMEDY IS COMPLETE EXCLUSION

The defects in the Government's proposed expert testimony cannot be cured by limitation. Topics 1 and 2 are not expert matters; Topic 7 is a non-opinion; and Topics 3, 4, 5, 6, and 8 are profile evidence that cannot survive Rules 401, 403, or 404. There is no subset of the Disclosure that is both relevant to knowing possession and free of impermissible profile inferences. The entire Disclosure should be excluded.

The Court need not — and should not — try to redraw the line during trial through evidentiary rulings on individual questions. The risk of unfair prejudice from any one of these topics is too great, and the cumulative risk is greater still. The Court should rule, in advance of trial, that SA Radke will not be permitted to testify in the Government's case-in-chief.

///

///

///

///

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Tanjapatkul respectfully requests that the Court grant this motion in limine and exclude the testimony of FBI Special Agent Brittany Radke in its entirety.

Dated: May 5, 2026          Respectfully submitted:

By          _____

SARA AZARI
Attorney for Defendant
ARTHIT TANJAPATKUL

11