UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                                                    Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

<u>Rolls Royce Paschal</u>                                                        <u>N/A</u>
Deputy Clerk                                                                     Court Reporter

Attorneys Present for Plaintiff:                          Attorneys Present for Defendant:

Not Present                                                                     Not Present

**PROCEEDINGS: (IN CHAMBERS) ORDER DENYING DEFENDANT'S MOTIONS
TO SUPPRESS [55] [56]**

Defendant Arthit Tanjapatkul ("Defendant") is charged with one count of possession of machineguns, in violation of 18 U.S.C. § 922(o)(1), and three counts of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2).  (Dkt. 24 ("Indictment").) Before the court are two motions: Defendant's Motion to Suppress Evidence of Alleged Child Pornography and for Disclosure of Grand Jury Materials, (Dkt. 56 ("CP Mot."), and Defendant's Motion to Suppress Evidence of Alleged Machineguns.  (Dkt. 55 ("MG Mot.").) The government opposes the CP Mot. and the MG Mot.  (Dkts. 66 ("CP Opp."); 69 ("MG Opp.").)  Defendant filed replies in support of the CP Mot. and the MG Mot.  (Dkts. 77 ("CP Reply"); 81 ("MG Reply").)  The court held evidentiary hearings regarding the CP Mot. and MG. Mot. on April 22, 2026, and April 29, 2026.  (Dkts. 97, 100.)  Based on the record, as applied to the relevant law, the CP Mot. and MG Mot. are each **DENIED**.[1]

---

[1]  The court recognizes that both the CP Mot. and MG Mot. each requested evidentiary hearings, which the court granted in conducting the hearings on April 22, 2026, and April 29, 2026.

**CRIMINAL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                                    Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

## I.      Background[2]

In October 2023, a Magistrate Judge issued warrants to search Defendant's home and person for evidence of stolen government property.  (Dkt. 55-1 ("October 2023 Warrants").)  The warrant allowed the seizure of digital devices that may contain relevant evidence but provided that the "government [would] not search the digital device(s) and/or forensic image(s) thereof" more than 120 days after the warrant's execution "without obtaining an extension of time order from the Court."  (*Id.* at Section II.4.a.)

That same month, law enforcement officers searched Defendant's residence pursuant to the October 2023 Warrants.  Law enforcement officers recovered several firearms, four of which were the alleged machineguns eventually charged in the indictment, and certain digital devices including a Buffalo-brand Hard Drive (the "Buffalo Drive").  The time to search the digital devices under the October 2023 Warrants expired on February 10, 2024.

On February 12, 2024, law enforcement officers sought an extension of the October 2023 Warrants which the Magistrate Judge granted.  (Dkt. 68-6.)  The extension provided the officers an additional 120 days to search any digital devices seized pursuant to the October 2023 Warrants.  (*Id.*)  While reviewing the Buffalo Hard Drive during that extension a law enforcement officer observed video thumbnails that appeared to depict child pornography with file names that also indicated child pornography.  Soon after, and partly based on those observations, a different Magistrate Judge authorized search warrants for the Buffalo Hard Drive and Defendant's storage unit for further evidence of child pornography.  (Dkt. 68 Ex. H, Ex. I.)  Law enforcement officers searched Defendant's storage unit the next day and found, among other things, a Seagate-brand hard drive ("Seagate Hard Drive") and certain CDs/DVDs.  (Dkt. 68 ¶ 16.)  Law enforcement officers then searched the Buffalo Hard Drive, Seagate Hard Drive, and the CDs/DVDs which contained evidence of child pornography that is the subject of the Indictment.  (*Id.* ¶¶ 17-19.)

---

[2] The court summarizes certain background facts from the parties' briefing and other public filings.  In addition, the court has considered all of the materials presented in this matter, including the declarations, live testimony at the evidentiary hearings, and exhibits.

**CRIMINAL MINUTES – GENERAL**

2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                    Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

## II.      Legal Standard

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991).

The task of the judicial officer issuing a search warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (internal citations omitted). A reviewing court need only ensure that the magistrate had a "substantial basis" for finding probable cause. *Id.* Probable cause is a "fair probability, not certainty or even a preponderance of the evidence." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006). In making such probable cause determinations, courts are limited to the "four corners" of the written affidavit given under oath. *U.S. v. Luong*, 470 F.3d 898, 904 (9th Cir. 2006). In making their determinations, "issuing judges may rely on the training and experience of affiant police officers." *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002). The Fourth Amendment provides that any evidence that is the product of an illegal search or seizure must be suppressed. *United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1063 (9th Cir. 1994). "A warrant need only be reasonably specific in its description of the objects of the search and need not be elaborately detailed." *United States v. Hayes*, 794 F.2d 1348, 1354 (9th Cir. 1986). "The search and seizure of large quantities of material is justified if the material is within the scope of the probable cause underlying the warrant." *Id*. at 1355.

## III.      Discussion

The court addresses the CP Mot. before turning to the MG Mot.

**CRIMINAL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                               Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

### A.      Motion to Suppress Evidence of Alleged Child Pornography

Defendant argues that the alleged child pornography materials should be suppressed for several reasons.  First, Defendant argues that the October 2023 Warrants expired after 120 days and could not be extended.  Second, that law enforcement officers' first encounter with alleged child pornography on the Buffalo Hard Drive was beyond the scope of the October 2023 Warrants.  Third, that the government should disclose the contents of the grand jury proceedings that led to the Indictment.  (*See generally* CP Mot.)  In reply, Defendant also argues that the October 2023 Warrants were impermissible general warrants because the warrants did not limit the officer's digital review to files dated within a recent time period.  (CP Reply.)  The court addresses each argument, including arguments raised for the first time in reply, and finds that none have merit.

### 1.      The Warrant Extension Does Not Require Suppression

Defendant argues that the "core issue" in whether to suppress the alleged child pornography evidence is "whether an expired 120-day search window can be reinstated by an 'extension,' or whether the officers should be required to obtain another warrant."  (CP Mot. at 11.)  The court is not aware of binding authority that directly answers this question.  *See United States v. Rohani*, 717 F. Supp. 3d 981, 993-94 (D. Or. 2023) (noting the lack of authority on the legal viability of extension orders).  The court notes "[t]he touchstone of the Fourth Amendment is reasonableness." *Jimeno*, 500 U.S. 248, 250 (1991).  The court finds that seeking an extension of the search warrant from the Magistrate Judge is reasonable, and therefore legally valid.  In any event, even if the Magistrate Judge did not have the legal authority to grant an extension, the court concludes that the evidence should not be suppressed under the good-faith exception.

Generally, evidence seized pursuant to an invalid warrant is subject to suppression under the exclusionary rule.  *See United States v. Henderson*, 906 F.3d 1109, 1114-15 (9th Cir. 2018) ("The suppression of evidence is 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'").  "The exclusionary rule encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and evidence later discovered and

**CRIMINAL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                    Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

found to be derivative of an illegality, the so-called fruit of the poisonous tree." *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (citation modified).

However, the good-faith exception excuses unlawful searches that are the "result of nonculpable, innocent police conduct." *Davis v. United States*, 564 U.S. 229, 240 (2011). Such circumstances exist when, for example, officers reasonably rely on the issuance of a warrant that is later held invalid. *United States v. Leon*, 468 U.S. 897, 922 (1984).

In this case, the court finds that even if the Magistrate Judge for some reason lacked authority to extend the warrant, the law enforcement officers acted in good faith in seeking and obtaining an extension of the warrant. The terms of the original warrant allowed the officers to seek an extension:

> The search team shall complete the search as soon as is practicable but not to exceed 120 days from the date of execution of the warrant. The government will not search the digital device(s) and/or forensic image(s) thereof beyond this 120-day period without obtaining an extension of time order from the Court.

(Dkt. 68-1 at Section II.4.a.)

The record reflects that the law enforcement officers seized evidence during the time period prescribed in the warrant, (Dkt. 68 ¶ 5); when the warrant expired, the officers halted their search of the Buffalo Hard Drive, (Dkt. 68 Ex. C; Ex. D); law enforcement officers promptly sought an extension of the warrant, which the Magistrate Judge granted, (Dkt. 68 Ex. F); and law enforcement officers resumed their search of the Buffalo Hard Drive once they received the extension, (Dkt. 68 ¶ 12.). Under those circumstances, the court finds that the law enforcement officers acted in reasonable reliance on a facially valid warrant. Even if there were some legal defect in the warrant extension, then, the court would decline to suppress the primary or secondary evidence that resulted from the warrant extension. *See Illinois v. Krull*, 480 U.S. 340, 348 (1987) (stating "the exclusionary rule should not be applied to evidence obtained by a police officer whose reliance on a search warrant issued by a neutral magistrate was objectively reasonable, even though the warrant was ultimately found to be defective");

**CRIMINAL MINUTES – GENERAL**

5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                                      Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

*see also Rohani*, 717 F. Supp. 3d at 995 ("Further, while law enforcement officials must have a reasonable knowledge of what the law prohibits . . . it is not clear that the law prohibits this warrant extension practice . . . It was reasonable for law enforcement officials to rely on the judgment of attorneys and a magistrate judge in concluding that an extension order was a proper method for complying with the warrant's provisions.").

### 2.      The Alleged Child Pornography on the Buffalo Hard Drive was Observed pursuant to the Plain-View Doctrine

Defendant contends that the government acted beyond the scope of the search warrant when it initially discovered alleged child pornography on the Buffalo Hard Drive and that such discovery is not subject to the plain-view doctrine because "the thumbnail images" law enforcement officers viewed were not "already present on the hard drive as the user left it" but instead were "generated by the government's own forensic software." (CP Reply at 15.) As Defendant argues, if "the government's forensic software generated those thumbnails — as is common and as the record does not foreclose — the images were never 'in plain view' at all." (*Id.* at 4.)  The court disagrees.

Because the warrant did not permit a search for evidence of child pornography, the "child pornography seized must have been in plain view during the search for evidence of" Defendant's suspected dealings in stolen government property.  *United States v. Wong*, 334 F.3d 831, 838 (9th Cir. 2003).  "To satisfy the plain view doctrine: (1) the officer must be lawfully in the place where the seized item was in plain view; (2) the item's incriminating nature was immediately apparent; and (3) the officer had a lawful right of access to the object itself."  *Id.*

Here, the court finds that, pursuant to a valid search warrant, law enforcement officers were searching the Buffalo Hard Drive for evidence relevant to allegations of dealing in stolen government property and came across material they believed could be child pornography whose incriminating nature was readily apparent based on thumbnail images and file names. Accordingly, the court finds this case falls under the not-uncommon scenario of law enforcement officers finding possible child pornography while searching a digital device pursuant to a search warrant for evidence of another crime.  *See Wong*, 334 F.3d at 838 ("While

**CRIMINAL MINUTES – GENERAL**

6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                     Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

searching the graphics files for evidence of murder, as allowed by the warrant, [the officer] discovered pictures of children as young as age three engaged in sexual acts.  The incriminating nature of the files was immediately apparent to [the officer].  Since the police were lawfully searching for evidence of murder in the graphics files, that they had legitimately accessed and where the incriminating child pornography was located, the evidence was properly admitted under the plain view doctrine."); *United States v. Taylor*, 163 F. Supp. 3d 816, 820 (D. Or. 2016) ("While searching Defendant's cell phone for evidence of drug dealing, the officer inadvertently encountered evidence of child abuse and child pornography.  I agree with the government that the doctrine of plain view applies here.").

Defendant does not persuade the court that forensic imaging—if it was indeed used— places the thumbnails beyond the scope of the plain-view doctrine.  Defendant does not point the court to legal authority that makes the distinction he advances between thumbnails generated by the government's software and thumbnails already present on the hard drive.  (*See generally* CP Mot.; CP Reply.)  And the court declines to be the first to make that distinction. *See United States v. Giberson*, 527 F.3d 882, 886 (9th Cir. 2008) ("Computer records are extremely susceptible to tampering, hiding, or destruction, whether deliberate or inadvertent.  Images can be hidden in all manner of files, even word processing documents and spreadsheets.  Criminals will do all they can to conceal contraband, including the simple expedient of changing the names and extensions of files to disguise their content from the casual observer.") (citation modified).

Moreover, the court observes that the October 2023 Warrants explicitly allowed the use of forensic imaging: "The search team may use forensic examination and searching tools, such as EnCase and FTK (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques."  (Dkt. 68-1 at Section II.4.b.3.)  This is critical on two levels.  First, once law enforcement officers were lawfully using forensic imaging pursuant to the search warrant in search of evidence of possessing stolen government property, the thumbnails were observed in plain view.  Second, at the very least, the court would not suppress based on the good-faith exception.  The court thus declines to suppress the primary evidence that law enforcement officers discovered on the Buffalo Hard Drive and the secondary evidence that flowed from that discovery.

**CRIMINAL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                           Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

### 3. Defendant Makes an Insufficient Showing to Unseal Grand Jury Proceedings

In summary, Defendant submits "there is grave concern that the grand jury was neither properly instructed on the requisite mental state [of the child pornography charge] nor presented with evidence sufficient to establish it. That failure — if confirmed — would constitute a fundamental constitutional error." (CP Reply at 20.) The source of Defendant's grave concern is that "the forensic evidence conclusively shows no access" by Defendant of the alleged child pornography "for more than a decade." (*Id*.) Defendant states that "there is a real, substantial, and legitimate concern that the grand jury was never properly instructed on the essential elements of the charged offense, and in particular, on the knowledge requirement that lies at its core." (*Id*. at 22.) Moreover, Defendant submits that his polygraph examination established no knowledge that there was possible child pornography on his digital devices and the size of Defendant's digital library weights against the possibility of knowledge. (CP Reply 20-21.) Therefore, Defendant "seeks only the testimony, exhibits, and charging instructions presented to the grand jury in connection with the CSAM allegations," (*Id*. at 23), or, alternatively, "that the [c]ourt conduct its own in camera review of the grand jury proceedings to satisfy itself that the indictment was founded on competent evidence and proper legal instructions," (*Id*. at 24).

The Supreme Court has "consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). Rule 6 of the Federal Rules of Criminal Procedure provides that the court may disclose grand jury transcripts to "a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E). "The standards the district court should follow when lifting the secrecy of grand jury proceedings are (1) that the desired material will avoid a possible injustice, (2) that the need for disclosure is greater than the need for continued secrecy, and, (3) that only the relevant parts of the transcripts should be disclosed." *United States v. Plummer*, 941 F.2d 799, 806 (9th Cir. 1991). "A trial judge should order disclosure of grand jury transcripts only when the party seeking them has demonstrated that a particularized need exists * * * which outweighs the policy of secrecy." *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *see also Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959) ("The burden, however, is on the defense to show that 'a particularized need' exists

**CRIMINAL MINUTES – GENERAL**

8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                                Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

for the minutes which outweighs the policy of secrecy.").  "[S]peculative assertions of improprieties in the proceedings do not supply the particular need required to outweigh the policy of grand jury secrecy." *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980) (citation modified).

The court has considered all of the arguments made by Defendant in support of its request regarding the grand jury materials.  (CP Mot. at 18-25.)  In evaluating the record, the court finds Defendant has made in insufficient showing for the relief sought because all of Defendant's arguments, including those related to the quantum of evidence presented to the grand jury and scienter, are "[m]ere unsubstantiated, speculative assertions of improprieties in the proceedings" that "do not supply the particular need required to outweigh the policy of grand jury secrecy." *Ferreboeuf*, 632 F.2d at 835; *see also United States v. DeTar*, 832 F.2d 1110, 1113 (9th Cir. 1987) (denying "a request for production of grand jury records [based] on nothing but baseless speculation").  In addition, Defendant's polygraph results, that occurred after the indictment was returned (*compare* Dkt. 24 (stating Indictment was returned on November 24, 2024)) *with* (Dkt 56-2 at 2 (stating "[o]n 2/28/2026, [Defendant] arrived at the test location to undergo a polygraph examination as scheduled")), do not benefit Defendant, even if the results were known prior to indictment, because potentially exculpatory evidence need not be presented to the grand jury.  *See United States v. Navarro*, 608 F.3d 529, 537 (9th Cir. 2010) (stating "the Supreme Court held in *United States v. Williams* that a prosecutor does *not* have a duty to present exculpatory evidence to a grand jury when seeking an indictment," and "[w]e have held that prosecutors have no obligation to disclose substantial exculpatory evidence to a grand jury") (citation modified).

In sum, Defendant has not met his burden to unseal the grand jury proceedings, nor for an *in camera* review of the same.  *See Ferreboeuf*, 632 F.2d at 835; *Plummer*, 941 F.2d at 806.

> ### 4. The October 2023 Warrants Were Sufficiently Particular and Specific

Defendant contends that the October 2023 Warrants were facially overbroad and insufficiently particular because the warrants did not restrict law enforcement officers' search to

---

**CRIMINAL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                                     Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

only recent files. (CP Reply at 11-12.) The court exercises its discretion to briefly address this argument even though Defendant improperly raises it for the first time on reply.

The Fourth Amendment has a specificity requirement in two respects: breadth and particularity. *U.S. v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009). Breadth is the requirement "that the scope of the warrant be limited by the probable cause on which the warrant is based." *Id.* (internal citations omitted). While particularity is the requirement that the "warrant must make clear to the executing officer exactly what it is that he or she is authorized to search for and seize." *Id.* (internal citations omitted). "The specificity required in a warrant varies depending on the circumstances of the case and the type of items involved." *United States v. Spilotro*, 800 F.2d 959, 963 (1986).

In this case, the court finds that October 2023 Warrants were based on probable cause and "objectively described the items to be searched and seized with adequate specificity and sufficiently restricted the discretion of agents executing the search." *See United States v. Adjani,* 452 F.3d 1140, 1148 (9th Cir. 2006). The warrants also "described the items to be searched and seized as particularly as could be reasonably expected given the nature of the crime and the evidence [the government] then possessed." *See id.* at 1149. "The specificity required in a warrant varies depending on the circumstances of the case and the type of items involved." *Spilotro*, 800 F.2d at 963. Here, evidence of Defendant dealing in stolen property could have stretched back for some time and a warrant is not *per se* unconstitutional when it lacks a temporal limitation. *See United States v. Cramer*, 2019 WL 1048831, at *4 (D. Or. Mar. 5, 2019) ("When digital evidence is concerned, the Ninth Circuit has often upheld broad warrants to seize all storage media for later examination.") (collecting cases).

### 5.  Conclusion

For the reasons stated above, the CP Mot. is DENIED.[3]

---

[3] The court notes that the government in its opposition argues that "[D]efendant does not, and cannot, establish a <u>Franks</u> violation justifying an evidentiary hearing." (CP Opp. at 30-31.) To the extent Defendant was seeking an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) ("*Franks*"), the court denies that request because the court finds Defendant did

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                                    Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

### B.      Motion to Suppress Evidence of Alleged Machineguns

Defendant argues that law enforcement officers "exceeded the scope of the warrant in seizing the firearms [charged in Count 1], and no exception to the Fourth Amendment applies." (MG Mot. at 1.)[4]  And, with regard to the plain-view doctrine, Defendant arguments include that the incriminating nature of the alleged machineguns was not immediately apparent.  (*See generally* MG Mot.)  The court concludes that the firearms alleged in count one of the Indictment were properly seized under the plain-view doctrine.

"If, during the lawful execution of a search warrant, an officer discovers evidence of a crime in plain view, the officer may seize the object even if the object is not listed in the search warrant.  To fall within the plain view exception, two requirements must be met: the officers must be lawfully searching the area where the evidence is found and the incriminatory nature of the evidence must be immediately apparent."  *Roe v. Sherry,* 91 F.3d 1270, 1272 (9th Cir. 1996) (citations omitted); *see also Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S. Ct. 2130, 2136–37, 124 L. Ed. 2d 334 (1993) ("Under [the plain view doctrine], if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant."); *Horton v. California,* 496 U.S. 128, 135–37 (1990) (describing the plain-view doctrine).  "When law enforcement is lawfully present in a particular location, including

---

not make "a substantial preliminary showing" required for such a hearing.  *United States v. Norris*, 942 F.3d 902, 909–10 (9th Cir. 2019).  Instead, as stated above, the court did hold evidentiary hearings on the matter, including hearing live witness testimony, not based on *Franks* and its progeny.  (Dkts. 97, 100.)

[4]  The firearms alleged in count one of the Indictment are (1) "One AR-15 style, .556 caliber rifle, with Plumcrazy lower with an obliterated serial number and LWRC upper model number M6A2-S;" (2) "One AR-15 style, .556 caliber rifle, with Plumcrazy lower with an obliterated serial number and Daniel Defense upper model number DDMM4V7;" (3) One Polymer 80, AR-15 rifle, .556 caliber, Serial Number P9SX;" and (4) One AK-47 7.62 Caliber rifle, Serial Number S-AL2038."  (*See* Dkt. 24 at 1-3.)

**CRIMINAL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                                     Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

pursuant to a valid warrant, and discovers incriminating evidence in plain view, the lawful scope of the warrant is not exceeded, and warrantless seizure of the object presents 'only a minor peril to Fourth Amendment protections, [but] ... a major gain in effective law enforcement.'" *United States v. Thorne*, 548 F. Supp. 3d 70, 136–37 (D.D.C. 2021), as corrected (July 16, 2021), aff'd, 169 F.4th 1117 (D.C. Cir. 2026) (citing to *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

The second requirement of the plain-view doctrine, that the incriminating nature of the evidence be "immediately apparent," focuses on whether the officers had "probable cause to believe they were associated with criminal activity." *Horton,* 496 U.S. at 131 n. 1; *see also Hicks*, 480 U.S. at 326-27; *Texas v. Brown,* 460 U.S. 730, 742 (1983) ("A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required.") (citation omitted); *D.C. v. Wesby*, 583 U.S. 48, 57 (2018) (stating "[p]robable cause is not a high bar," and "[i]t requires only a probability or substantial chance of criminal activity, not an actual showing of such activity") (citation modified); *Gates*, 462 at 245 n.13 (stating "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity" and [b]y hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands"). "This standard does not require the officers to *know* that the item seized is illegal." *United States v. Stafford*, 416 F.3d 1068, 1076 (9th Cir. 2005); *see also United States v. Hudson*, 100 F.3d 1409, 1420 (9th Cir. 1996) (stating that "[b]y requiring that the incriminatory nature of the evidence be immediately apparent, the doctrine does not require that the officer be possessed of near certainty as to the seizable nature of the items[;]" "[i]nstead, probable cause is a flexible, common-sense standard, requiring only that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband ... or useful evidence of a crime") (cleaned-up); *United States v. Barajas*, 517 F. Supp. 3d 1008, 1022 (N.D. Cal. 2021) (similar).

Based on the record, the court finds the evidence includes the following:[5]

---

[5] The court has considered all of the admissible evidence in the record, but focuses on the following evidence for its ruling regarding the plain-view doctrine.

**CRIMINAL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                                Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

1.    Task Force Officer ("TFO") Farshid Hashempour was a TFO "with the Federal
      Bureau of Investigation ("FBI"), originally from Santa Ana Police Department
      ("SAPD")" who is currently an Investigator with the Orange County District
      Attorney's Office."  (Dkt. 69-1, ¶ 1.)

2.    TFO Hashempour was one of the law enforcement officers who executed the
      search warrant on October 13, 2023, that resulted in the seizure of the firearms in
      this case.  (*Id*., ¶ 7.)

3.    TFO Hashempour has significant experience with firearms, including
      "complet[ing] the International Firearm Specialist Academy Accreditation course"
      that included "approximately 40 hours of specialized training, including learning
      segments on assault weapons and machineguns."  (*Id*., ¶¶ 2-4.)

4.     "Based on [his] training and experience, and familiarity with the California Penal
      Code (CPC), [TFO Hashempour] know[s] that under CPC § 30605(a), it is illegal
      for a person in California to possess any assault weapon," and [TFO Hashempour]
      also know[s] that under CPC § 30515, an assault weapon is identifiable, among
      other ways, as a rifle that does not have a fixed magazine, has an overall length of
      less than 30 inches, a forward pistol grip, a magazine with a capacity of more than
      10 rounds and either a pistol grip, or fixed or folding stock.  (*Id*., ¶ 5.)

5.    "[O]fficers seized a total of 72 firearms, including the four machineguns charged in
      the Indictment, which included 57 rifles, 12 handguns and 3 shotguns," and "over
      200 firearm magazines were seized along with hundreds of rounds of ammunition
      of various calibers."  (*Id*., ¶ 7.)

**CRIMINAL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                                    Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

6.    "… four firearms later confirmed to be machineguns and charged in the Indictment in Count 1 … have the following CPC § 30515 assault weapon characteristics[:][6]

    a.    AR-15 style, .556 caliber rifle, with Plumcrazy lower with an obliterated serial number and LWRC upper model number M6A2-S—collapsible stock; pistol grip; capacity to accept detachable magazine; forward grip.

    b.    AR-15 style, .556 caliber rifle, with Plumcrazy lower with an obliterated serial number and Daniel Defense upper model number DDMM4V7 — collapsible stock; pistol grip; capacity to accept detachable magazine.

    c.    Polymer 80, AR-15 rifle, .556 caliber, Serial Number P9SX — collapsible stock; pistol grip; capacity to accept detachable magazine.

    d.    AK-47 7.62 Caliber rifle, Serial Number S-AL2038 (PXL) — pistol grip; capacity to accept detachable magazine; forward grip."

(*Id.*, ¶ 10.)

As referenced by TFO Hashempour, (Dkt. 69-1 ¶ 5), California Penal Code Section 30605 provides, in pertinent part:

"(a)    Any person who, within this state, possesses any assault weapon, except as provided in this chapter, shall be punished by imprisonment in a county jail for a period not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170."

---

[6] The court notes the MG. Opp. contains photographs of the four firearms charged in count one of the Indictment.  (*See* Dkt. 69-1 ¶ 10 ("The firearms in Ex. D are the four firearms later confirmed to be machineguns and charged in the Indictment in Count 1"); (Dkt. 69-5 (Ex. D).)

**CRIMINAL MINUTES – GENERAL**

14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                          Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

In defining an assault weapon, California Penal Code Section 30515, as referenced by TFO Hashempour, (Dkt. 69-1 ¶ 5), provides, in pertinent part:

(a)     Notwithstanding Section 30510, "assault weapon" also means any of the following:

    (1)     A semiautomatic, centerfire rifle that does not have a fixed magazine but has any one of the following:

        (A)     A pistol grip that protrudes conspicuously beneath the action of the weapon.
        (B)     A thumbhole stock.
        (C)     A folding or telescoping stock.
        (D)     A grenade launcher or flare launcher.
        (E)     A flash suppressor.
        (F)     A forward pistol grip.

    (2)     A semiautomatic, centerfire rifle that has a fixed magazine with the capacity to accept more than 10 rounds.

    (3)     A semiautomatic, centerfire rifle that has an overall length of less than 30 inches.
    …

(b)     For purposes of this section, "fixed magazine" means an ammunition feeding device contained in, or permanently attached to, a firearm in such a manner that the device cannot be removed without disassembly of the firearm action.

First, with regard to the plain-view doctrine, the court finds that law enforcement officers were lawfully searching the area where the evidence was found, namely, the firearms alleged in count one of the Indictment, during a search in a location consistent with the lawfully issued search warrant.  (Dkt. 69-1 ¶¶ 7, 10.); *see also Sherry*, 91 F.3d at 1272 (stating one of the requirements for the plain-view doctrine is that "the officers must be lawfully searching the area

**CRIMINAL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                                      Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

where the evidence is found"); *United States v. Bulacan*, 156 F.3d 963, 968 (9th Cir. 1998), as amended (Nov. 16, 1998) ("The initial intrusion can be justified by a warrant or by one of the recognized exceptions of the warrant requirement.").

Second, the court finds that the government has sufficiently established by probable cause that the incriminating nature of the four firearms alleged in count one of the Indictment was immediately apparent in light of California Penal Code Sections 30510 and 30515.  For instance, the court credits the evidence provided by the declaration and live testimony of TFO Hashempour about the circumstances of the search, and the incriminating characteristics of the four firearms alleged in count one of the Indictment, such as their pistol grips and capability to accept detachable magazines (not a fixed magazine).  (*See, e.g.*, Dkt. 69-1 ¶¶ 2-5, 7, 10; Dkt. 69-5); *see also United States v. Arrellano-Rios*, 799 F.2d 520, 523 (9th Cir. 1986) ("The experience of a trained law enforcement agent is entitled to consideration in determining whether there was probable cause.").

Defendant raises several arguments, including providing potentially innocent explanations for the firearms that law enforcement officers did not rule out before seizing the weapons and that the firearms were not readily identifiable as machineguns.  (*See generally* MG Reply.)  The court finds that the probable cause standard does not require such a high bar: "the probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (cleaned up); *see also United States v. Stafford*, 416 F.3d 1068, 1076-77 (9th Cir. 2005) (finding that firearms, armor-piercing ammunition, and a grenade launcher that officers found in a closet were lawfully seized under the plain-view exception because the officers had probable cause to believe they were illegal) *Gates*, 462 U.S. at  245 n.13 (1983) (stating "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity" and [b]y hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens demands").  The plain-view doctrine "standard does not require the officers to know that the item seized is illegal." *Stafford*, 416 F.3d at 1076.  Lastly, because the court finds law enforcement officers properly seized the four firearms alleged in court one of the Indictment pursuant to the plain-view

**CRIMINAL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No. 8:24-cr-00132-FWS-1                                      Date: May 8, 2026
Title: USA v. Arthit Tanjapatkul

doctrine under California Penal Code Sections 30510 and 30515 that concern assault weapons, the court need not address the issue of whether the firearms were properly seized under the plain-view doctrine as machineguns.

In sum, the court finds that the firearms alleged in count one of the Indictment were lawfully seized under the plain-view doctrine. Put another way, "[t]he search was authorized by the warrant; the seizure was authorized by the 'plain-view' doctrine." *Horton v. California*, 496 U.S. 128, 142 (1990). Therefore, the MG Mot. is **DENIED**.

## IV.   Disposition

For the reasons stated above, the court **DENIES** the CP Mot. and the MG Mot.

_____